**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.W.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TURLOCK UNIFIED SCHOOL DISTRICT,<br><br>　　　　Defendant. | Case No. 1:20-cv-00266-DAD-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PETITION FOR INCOMPETENT COMPROMISE<br><br>ORDER VACATING JUNE 15, 2022 HEARING<br><br>(ECF No. 24) |

**I.**

**INTRODUCTION**

Currently before the Court is the parties joint petition for approval of an incompetent's compromise, filed on May 6, 2022. Plaintiff S.W. is represented by her guardian ad litem, Sandra Drumonde ("Drumonde"). The matter is before the assigned Magistrate Judge for the issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302, and the standing order issued in this action.[1] No hearing was set on this matter by the petitioners. On May 9, 2022, the Court set a hearing on the petition for June 15, 2022. (ECF No.

---

[1] The District Judge's standing order in light of ongoing judicial emergency in the Eastern District of California, issued on February 24, 2020, specifies that "Motions to approve minors' compromises," shall be noticed for hearing before the assigned Magistrate Judge. (ECF No. 5-2 at 3.) While the standing order specifies minors' compromises, a motion for an incompetent's compromise is subject to the same Local Rule and the Court considers it sufficiently analogous to be properly set before the assigned Magistrate Judge for the issuance of findings and recommendations. See L.R. 202.

1

1   25.) The Court finds this matter suitable for decision without oral argument and the hearing shall
2   be vacated. See Local Rule 230(g). The Court, having reviewed the joint petition, the
3   supplemental briefing, and the Court's record, recommends the joint petition for compromise of
4   the incompetent's claims should be granted.

## II.

## BACKGROUND

Plaintiff filed this action on February 21, 2020, alleging Defendant violated S.W.'s rights by discriminating against her in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794. (ECF No. 1.) Specifically, S.W. alleges the District discriminated against her by failing in its responsibilities to provide its services, programs, and activities in a full and equal manner.

On March 4, 2020, after receipt of supplement briefing, the Court granted Plaintiff's motion to appoint a guardian ad litem and appointed Sandra Drumonde as guardian ad litem for Plaintiff S.W. (ECF No. 9.) On March 16, 2020, the Court entered a stipulation approving an agreement that the Defendant would waive exhaustion of administrative remedie4s as a defense in this action. (ECF No. 12. ) On March 27, 2020, Defendant filed an answer. (ECF No. 13.) On March 8, 2022, pursuant to the parties' notification that a settlement had been reached, the Court ordered the parties to file a request for approval of the settlement within sixty days. (ECF No. 23.) On May 6, 2022, the instant joint petition for approval of incompetent's compromise was filed. (Pet. Approv. Compr. ("Pet"), ECF No. 24.) On May 9, 2022, the Court set a hearing on the petition to be held on June 15, 2022. (ECF No. 25.) On May 25, 2022, the Court ordered the parties to submit supplemental briefing in support of the joint petition. (ECF No. 26.) On June 7, 2022, supplemental briefing was filed in support of the petition. (Suppl. Br. Supp. Pet. ("Suppl."), ECF No. 27.)

## III.

## LEGAL STANDARD

A petition for an incompetent's compromise is subject to the same Local Rule's requirements as a petition for a minor's compromise. See L.R. 202. The Local Rules of this

District, and the California laws referenced therein, refer both to incompetents and minors. Thus, while the quotations from cited materials herein may only use the term "minor," the Court considers any such citations or discussion to be sufficiently applicable to the settlement of the incompetent Plaintiff's claims herein.  Therefore, within this order, given the bulk of the caselaw appears to involve litigation of claims of minors, the Court will consider the legal standards to be generally the same or nearly identical.  See Fed. R. Civ. P. 17(c) ("Minor or Incompetent Person.").

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.' "  Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)).

The Local Rules for this district provide that "[n]o claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise."  L.R. 202(b).  "In actions in which the minor or incompetent is represented by an appointed representative pursuant to appropriate state law, excepting only those actions in which the United States courts have exclusive jurisdiction, the settlement or compromise shall first be approved by the state court having jurisdiction over the personal representative."  L.R. 202(b)(1).  In all other actions, the motion for approval of a proposed settlement shall be filed pursuant to Local Rule 230, and must disclose, among other things, the following:

> the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court. The Court may also require the filing of experts' reports when none have previously been prepared or additional experts' reports if appropriate under the

> circumstances. Reports protected by an evidentiary privilege may be submitted in a sealed condition to be reviewed only by the Court in camera, with notice of such submission to all parties.

L.R. 202(b)(2).

"When the minor or incompetent is represented by an attorney, it shall be disclosed to the Court by whom and the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount." L.R. 202(c). "Upon the hearing of the application, the representative compromising the claim on behalf of the minor or incompetent, and the minor or incompetent shall be in attendance unless, for good cause shown, the Court excuses their personal attendance." L.R. 202(d).

In Robidoux, the Ninth Circuit cautioned that the typical practice of applying state law and local rules governing the award of attorneys' fees "places undue emphasis on the amount of attorney's fees provided for in settlement, instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement." 638 F.3d at 1181. District courts should thus "limit the scope of their review to the question [of] whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Id. at 1181-82. "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." Id.; but see A.G.A. v. Cty. of Riverside, No. EDCV1900077VAPSPX, 2019 WL 2871160, at *2 (C.D. Cal. Apr. 26, 2019) ("Some courts have read Robidoux to suggest it is improper to evaluate the reasonableness of attorneys' fees provisions in proposed settlement agreements of minors' claims . . . The Court declines to adopt this approach.").[2]

---

[2] In A.G.A., the court noted the action had "a key distinguishing feature from the facts presented in Robidoux [where] the district court had denied in part the parties' motion to approve the proposed settlement, which included as a material term that plaintiffs' counsel would recover approximately 56% of the settlement amount as attorneys'

4

1  The holding of Robidoux was expressly "limited to cases involving the settlement of a 2 minor's federal claims," and the Circuit did "not express a view on the proper approach for a 3 federal court to use when sitting in diversity and approving the settlement of a minor's state law 4 claims." 638 F.3d at 1179 n.2. Some district courts have extended the application to state law 5 claims. See Calderon v. United States, No. 1:17-CV-00040-BAM, 2020 WL 3293066, at *3 6 (E.D. Cal. June 18, 2020) (noting that although Robidoux "expressly limited its holding to cases 7 involving settlement of a minor's federal claims . . . district courts also have applied this rule in 8 the context of a minor's state law claims.") (citations omitted); A.G.A., 2019 WL 2871160, at *2 9 n.1 ("The Ninth Circuit did not express a view on the proper approach for a federal court to use 10 when sitting in diversity and approving the settlement of a minor's state law claims . . . however, 11 the Court has federal question jurisdiction and is exercising supplemental jurisdiction over 12 Plaintiffs' state law claims . . . as the case 'involves' the settlement of Plaintiffs' federal claims, 13 the Court applies the Robidoux standard to the entire settlement.").

## IV.

## DISCUSSION

16  Plaintiff's complaint brings claims under: (1) Section 504 of the Rehabilitation Act of 17 1973; and (2) the ADA. (Compl., ECF No. 1.) Thus, the Court will apply the Robidoux 18 standard when reviewing the settlement. See, e.g., Est. of Sauceda v. City of N. Las Vegas, No. 19 211CV02116GMNNJK, 2020 WL 1982288, at *3 n.3 (D. Nev. Apr. 15, 2020) ("The Ninth 20 Circuit has made clear that its standards apply in federal question cases.").

21 ///

---

fees . . . The Ninth Circuit found the district court abused its discretion in denying in part the motion based on the amount of attorneys' fees alone because it placed 'undue emphasis on the amount of attorneys' fees provided for in [the] settlement.' " 2019 WL 2871160, at *3 (quoting Robidoux, 638 F.3d at 1181). The A.G.A. court found that in contrast, the attorneys' fees at issue were not a material term of the settlement agreement, there was no express provision for attorneys' fees, and in approving the settlement, the court thus only considered whether the net amount distributed to each plaintiff was fair and reasonable in light of the facts of the case, the minors' specific claims, and recover in similar cases, as required by Robidoux. 2019 WL 2871160, at *3. The court found the "amount of attorneys' fees at issue here is an independent matter, the obligation arising from the retainer agreements between Plaintiffs and their counsel," and would evaluate the request in light of the special duty to safeguard the interests of the minor litigants, as well as the local rule requiring the court to fix the amount of attorneys' fees in an action involving a minor. Id. The court applied California law to evaluate the request for attorneys' fees pursuant to the local rule, and in line with other district courts throughout California. Id. (citations omitted). The court reduced the attorneys' fees from 33% to 25% of the settlement fund. Id. at *4.

5

### A. Supplemental Briefing

Upon initial review of the joint petition, the Court determined there was a need for supplemental briefing. (ECF No. 26.) Specifically, the Court found the petition did not specifically identify "the facts and circumstances out of which the causes of action arose, including the time, place and persons involved," as required by Local Rule 202(b). (ECF No. 26 at 2.) The Court further found that given the lack of description of the facts and circumstances surrounding the causes of action, the petition did not currently provide sufficient information for the Court to properly consider "the manner in which the compromise amount or other consideration was determined," and required supplementation of information "including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise," under Local Rule 202(b)(2). (Id.)

Additionally, Local Rule 202(b)(2) requires the following information to be disclosed regarding personal injury claims: "if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court." L.R. 202(b)(2). The Court noted that while the two causes of action were not generally personal injury statutes, the complaint alleged Defendant acted with deliberate indifference; that as a result of the denial of proper special education services, during the 2017-2018 school year, Plaintiff was unable to leave her home which caused her to suffer health issues in addition to rotting teeth, conditions that became life threatening the following year; that the teeth rot led to weeks of fevers and pain and she spent the majority of the twelfth grade in extreme oral pain; and that if Defendant had provided appropriate support and services, she would have been able to leave her house and go to a doctor. (Compl. at 6, 8.) The prayer for relief includes a request for compensatory damages for injuries, as well as for psychological and emotional distress. (Compl. 12) The Court ordered, to the extent Plaintiff was alleging personal injury, that the supplemental briefing shall provide sufficient information for the Court to determine whether the injury is temporary or permanent, any expert reports if those have been prepared, and any other information proper under the Local Rule. (ECF No.26 at 2-3.)

6

The initially filed joint petition provided no caselaw demonstrating the net recovery is fair and reasonable in light of the recovery in similar cases, and ordered the parties to provide such supporting caselaw. (ECF No. 26 at 3.)

Finally, the Court ordered supplemental briefing concerning a term of the proposed settlement that releases the Defendant of any legal responsibility to provide an education to S.W. prospectively and includes a prospective waiver of special education claims under the Individuals with Disability Education Act ("IDEA") and Section 504 of the Rehabilitation Act. (Pet. 3.) Specifically, the Court stated it is unclear whether this waiver may violate public policy laws, and ordered supplemental briefing on the properness of the waiver. (ECF No. 26 at 3-4.)

**B.    The Petition for Compromise Satisfies the Requirements of Local Rule 202**

In consideration of the joint petition and the supplemental briefing (collectively referred to hereafter as the "Joint Petition"), the Court finds the petitioners have sufficiently set forth the information required under Local Rule 202. See Hughey v. Camacho, No. 2:13-CV-02665-TLN-AC, 2019 WL 1208987, at *3 (E.D. Cal. Mar. 14, 2019) ("Plaintiffs have met the procedural requirements of Local Rule 202(b)(2) . . . Plaintiffs have identified the Minor, G.H., as a six-year-old male; and have identified the claims to be settled in the pending action, all relevant background facts, and the manner in which the proposed settlement was determined."). The Court now summarizes the information relevant to Local Rule 202, that is set out in the Joint Petition.

S.W. is a twenty-one-year-old disabled adult and resident of the City of Turlock located within County of Stanislaus, California. (Pet. 2.) S.W. is an adult special education student who is an individual with exceptional needs within the meaning of that term under California Education Code § 56026. (Id.) S.W. is an individual with mental impairments that substantially limited many major life activities within the meaning of 34 C.F.R. § 104.3(j). (Id.) Defendant Turlock Unified School District ("District") is a public entity duly incorporated and operating under California law as a school district; and is a recipient of federal financial assistance subject to the requirements of Title II of the Americans with Disabilities Act and Section 504 of the

7

1  Rehabilitation Act of 1973.  (Id.)

2      On February 21, 2020, S.W., by and through her guardian ad litem, Ms. Drumonde, filed
3  this federal civil rights case asserting two causes of action.  (Id.)  First, S.W. alleges that the
4  District violated S.W.'s rights by discriminating against her in violation of Title II of the
5  Americans with Disabilities Act of 1990 pursuant to 42 U.S.C. § 12132.   (Suppl. 1.)  S.W.
6  alleges the District discriminated against her by failing in its responsibilities under Title II to
7  provide its services, programs, and activities in a full and equal manner by failing to ensure that
8  educational services were provided on an equal basis to children with disabilities free of hostility
9  toward their disability.  (Suppl. 1-2.)  Second, S.W. alleges that the District violated her rights by
10 discriminating against her in violation of Section 504 of the Rehabilitation Act of 1973, as
11 amended, 29 U.S.C. 794 ("Section 504").  (Suppl. 2.)  Section 504 and its regulations prohibit
12 the exclusion from the participation in, or being denied the benefits of, or being subjected to
13 discrimination under any program or activity receiving Federal financial assistance.  (Id.)  As to
14 both claims, S.W. alleges that the District failed to accommodate her unique needs with
15 appropriate behavior supports, including the provision of an appropriate behavior support plan,
16 adequate aide training, and a functional behavior assessment.  (Id.)

17     Defendant has denied any wrongdoing in this action and asserted the following
18 affirmative defenses: 1) No Cause of Action; 2) No Liability For Acts of Others; 3) Contributory
19 Fault Of Third Parties; 4) Third-Party Conduct As Superseding Cause; 5) Failure to Mitigate; 6)
20 No Jurisdiction; 7) "Final Settlement Agreement"; 8) Waiver; 9) Knowledge/Consent; 10) Good
21 Faith Immunity; and 11) State Law Preemption.  (Pet. 2-3.)

22     The parties proffer that as of the filing of the Joint Petition, because S.W. is twenty-one-
23 years old and will be twenty-two years old on in less than two months, pursuant to California
24 Education Code section 56026(c)(4)(B), S.W. will no longer be eligible to receive special
25 education supports and services at the beginning of the 2022-2023 school year.  (Suppl. 2.)

26     Since the filing to S.W.'s initial complaint on February 21, 2020, S.W. and the District
27 implemented a home-based program, pursuant to a special education settlement, that benefited
28 S.W.  (Id.)  While the program contemplated in the settlement was initially stalled by the

8

1 COVID-19 pandemic, it was implemented during the 2020-2021 school year.  By the end of the
2 2020-2021 school year, S.W. was able to leave her home, go to doctor's appointments, attend
3 social functions, and was working with the teacher provided by the District.  (Id.)

4       The teacher who worked well with S.W. left her position at the end of the 2020-2021
5 school year.  (Id.)  Subsequent to that time, at the start of the 2021-2022 school year, S.W.
6 contends that the program was not implemented as called for in the initial special education
7 settlement between the parties.  (Id.)  The District disputes this contention and believes they
8 implemented S.W.'s program as called for in the initial special education settlement.  (Supp. 2-
9 3.)  The District also believes that S.W. progressed academically, and that it has at all times been
10 ready to implement the agreed program, but that its ability to do so has been frustrated to some
11 extent by the fact that S.W. either cannot or will not attend school in person as contemplated by
12 the agreement.  (Suppl. 3.)

13       Despite S.W. not receiving the bulk of her negotiated supports and services in the special
14 education settlement during the 2021-2022 school year, S.W. has continued to leave her home
15 with little resistance.  (Id.)  However, S.W. refused to engage with the District provided aides
16 who continued to go to her home.  This was in contrast to the previous school year when S.W.
17 had a special education credentialed teacher who came to her home, in addition to the aide
18 support.  At this point, the District believes that the agreement contemplated S.W. attending
19 classes in person, and believes she would benefit from doing so.  From the District's perspective,
20 S.W.'s parent was either unwilling or unable to allow her to attend the program as the District
21 believes it was contemplated.  S.W. strongly disagrees with the District's position.  (Id.)

22       Nonetheless, the parties proffer that S.W.'s parent guardian is content that she is now
23 able to leave the home with her daughter and get her to medical appointments with minimal
24 issues.  (Id.)  As a result, S.W.'s teeth were temporarily fixed to resolve the immediate health
25 issues.  Upon approval of the Joint Petition For Approval of Incompetent's Compromise, S.W.'s
26 mother intends to purchase permanent dental implants which will ultimately resolve her dental
27 issues.  S.W.'s mother believes this will cost around twenty-thousand dollars.  Furthermore, the
28 parties submit this will leave S.W. with more than sufficient funding to create a program similar

9

1 to what was provided in her home during the 2020-2021 school year.  (Id.)

2 On March 1, 2022, Parties participated in a private mediation.  As a result of the
3 mediation, Parties came to a global settlement that has been reduced to writing and is attached to
4 Joint Petition (the "Settlement Agreement").  (Pet. 3, Ex. 1, ECF No. 24-1.)

5 The Court also finds the Joint Petition addresses the requirements of Local Rule 202(c),
6 concerning disclosure of the attorneys' interest.  Specifically, counsel for Plaintiff, Daniel Shaw,
7 declares that: he was retained by Sandra Drumonde to represent S.W., her disabled adult child;
8 the case was not referred to counsel by Defendant Turlock Unified School District; and counsel
9 has no relationship with the Defendant.  (Pet. 2.)  Further, as discussed in greater detail below,
10 counsel proffers that while the retainer agreement entitled counsel to take the greater of the total
11 amount of attorneys' fees, or a percentage of the net recovery, counsel has elected to take the
12 amount of fees option which amounts to less than a percentage of the total net recovery.  (Pet. 2.)

13 Accordingly, the Court finds the Joint Petition satisfies the requirements of the Local
14 Rule 202.  The Court now turns to determine whether the amount of the net settlement to the
15 minors is fair and reasonable.

16 **C.     The Terms and Amount of Settlement**

17 For the reasons explained below, the Court finds the "net amount distributed to [the
18 incompetent plaintiff] in the settlement is fair and reasonable, in light of the facts of the case, the
19 [plaintiff's] specific claim, and recovery in similar cases."  Robidoux, 638 F.3d at 1181-82.

20 Once approved, the Settlement Agreement will fully, finally, and forever settle any and
21 all known and unknown claims, rights, demands, or causes of action between S.W. and the
22 Defendant that were raised or could have been raised up to the date this Court approves the
23 Settlement Agreement.  (Pet. 3.)  The Settlement Agreement nullifies a prior special education
24 settlement dated January 2, 2020.  (Id.)  The Settlement Agreement has been executed by the
25 parties, and approved by both the Defendant's governing board and the NorCal Relief Board.
26 (Id.)

27 Defendant will pay the sum of five hundred thousand dollars ($500,000), to Plaintiff's
28 counsel's client trust.  (Pet. 4.)  The law firm trust will then retain an estate planning attorney and

use a portion of the settlement amount to establish a special needs trust, which will cost an estimated $6,000. (Id.)

Plaintiff's counsel's law firm will take $60,000 to cover its attorneys' fees and costs in this matter. The law firm proffers it has elected to take only attorneys' fees and costs as opposed to a percentage of the total settlement proceeds, which counsel proffers was a decision made to maximize S.W.'s net proceeds and ensure a settlement could be reached. (Pet. 4.) Thus, S.W. will receive a total net recovery of $434,000. Petitioners proffer that the total net recovery for S.W. will be more than sufficient to cover future costs associated with the harm alleged in her civil rights complaint.

1.  The Special Needs Trust

Petitioners proffer that the Settlement Agreement provides for immediate cash payments to S.W. through a special needs trust under 42 U.S.C. § 1396p(d)(4)(A)[3] and California Probate Code § 3600, *et seq.* (Pet. 4.)

Pursuant to California Probate Code § 3604(b), a special needs trust may be established only if the Court determines all of the following: "(1) [t]hat the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap"; "(2) [t]hat the minor or person with a disability is likely to have special needs that will not be met without the trust"; and "(3) [t]hat

---

[3] This provision excludes certain trusts from income counting, if the trust is: "A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by the individual, a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter." 42 U.S.C. § 1396p(d)(4)(A). It sets "forth exceptions to the general rules that trust assets count as income and resources for purposes of Medicaid eligibility." Orr v. Colvin, No. 2:14-CV-1251-EFB, 2016 WL 1244252, at *1 n.1 (E.D. Cal. Mar. 30, 2016) ("For a trust to be exempt from resource counting, it must provide that 'the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan.'"). The Settlement Agreement expressly provides that the Special Needs Trust will be established by a separate estate planning attorney. While the Settlement Agreement does not expressly reference 42 U.S.C. § 1396p(d)(4)(A), the Court finds the provision specifying a special needs trust will be set up through the engagement of an estate planning attorney, and the Petitioner's proffer that it will be established under 42 U.S.C. § 1396p(d)(4)(A), is sufficient for the Court to find no direct issue with approving the settlement, despite an absences of an express proffer that the special needs trust will provide such funds will be released to the state upon the death of the Plaintiff. The proposed order additionally states that the special needs trust will be established pursuant to 42 U.S.C. § 1396p(d)(4)(A). (ECF No. 24-2 at 2.)

money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability." Cal. Prob. Code § 3604(b)(1)-(3).

As to Section (b)(1), Petitioners submit the requirement is met as S.W. is a non-verbal adult with Autism; and S.W.'s Autism impacts her in all areas of development, including though not limited to, the ability to communicate, socialize, adaptive functioning, academics, sensory processing, and behavior. (Pet. 5.) As to Section (b)(2), Petitioners submit that S.W. is likely to have special needs that will not be met without the special needs trust; that without the trust, S.W. will be ineligible for public assistance programs; that these benefits are sure to be vital to S.W.'s continued support, safety, and personal well-being; and that such essential needs as personal care assistance, independent living services, medical services, and other palliative care will not be met or available without the protection offered by a special needs trust. (Id.) As to Section (c)(1), Petitioners submit that the money to be paid to the trust does not exceed the amount that appears to be reasonably necessary to meet the special needs of S.W. (Id.)

The Court finds that the requirements for the establishment of a special needs trust pursuant to California Probate Code § 3604(b) have been met.[4]

///

---

[4] The Petitioners further proffer that while this Court is not bound by the California Rules of Court, the proposed special needs trust will also fully comply with California Rule of Court 7.903. This provision states:

> Except as provided in (d), unless the court otherwise orders for good cause shown, trust instruments for trusts funded by court order must: (1) Not contain "no-contest" provisions; (2) Prohibit modification or revocation without court approval; (3) Clearly identify the trustee and any other person with authority to direct the trustee to make disbursements; (4) Prohibit investments by the trustee other than those permitted under Probate Code section 2574; (5) Require persons identified in (3) to post bond in the amount required under Probate Code section 2320 et seq.; (6) Require the trustee to file accounts and reports for court approval in the manner and frequency required by Probate Code sections 1060 et seq. and 2620 et seq.; (7) Require court approval of changes in trustees and a court order appointing any successor trustee; and (8) Require compensation of the trustee, the members of any advisory committee, or the attorney for the trustee, to be in just and reasonable amounts that must be fixed and allowed by the court. The instrument may provide for periodic payments of compensation on account, subject to the requirements of Probate Code section 2643 and rule 7.755.

Cal. Rule Court 7.903(c). The Court finds compliance with these requirements adds additional support to finding the proposed special needs trust proper, and the Settlement Agreement fair and reasonable.

2.     Facts of the Case, Defenses, Settlement Amount, and Outcomes in Similar Cases

Petitioners proffer that the net recoveries to S.W. through the special needs trust will be very substantial, and more than sufficient to cover the costs of care for S.W. and to provide the compensatory services she therefore requires as a result of the incidents described in her initial Complaint. Petitioners submit that the Settlement Agreement allows S.W.'s mother to use funds from the trust for the purposes of providing the compensatory services she requires. Plaintiff's counsel believes that the settlement is fair and reasonable, and the Defendant disputes causation of S.W.'s injuries and damages. (Pet. 6-7.) Petitioners proffer the damages sustained by S.W. are primarily compensatory in nature, though she did suffer physical injuries such as the rotting teeth, as the Court described above and requested supplemental briefing concerning.

Petitioners proffer that Defendant intended to challenge the nature and extent of the compensatory, psychological, emotional, and physical injuries sustained by S.W., and that with respect to emotional distress, pain, and suffering, the United States Supreme Court recently ruled that such remedies are not available under Section 504 of the Rehabilitation Act of 1973, which Plaintiff's second cause of action is brought under. See Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1576 (2022) ("For the foregoing reasons, we hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here."). The Petitioners proffer that it is unclear whether this same exclusion would extend to Title II of the ADA, Plaintiff's other cause of action. (Suppl. 4.) Defendant contends it does apply and would intend to argue the same should this matter proceed to trial.

The initially filed petition did not provide caselaw concerning recovery in similar cases, and the Court ordered the Petitioners to provide such supporting caselaw in supplemental briefing. In supplemental briefing, Petitioners submit that the settlement is in line with, or greater than the average recover in similar cases. (Suppl. 4.) However, Petitioners state that "[b]oth counsel have struggled with only limited success to find other settlements for this Court to review that contained a similar fact pattern." (Suppl. 4.) Nonetheless, the Petitioners proffer that the net recover in this case is higher than other settlements approved in this District.

Petitioners direct the Court to D.K. ex rel. G.M. v. Solano Cnty. Office of Educ., case no.

2:08-00534-MCE-DAD, Docket Nos. 69, 141, where the court approved net settlement payments of $200,000 to each minor based on allegations of physical abuse, including allegations that a teacher and classroom aide forced a student to walk on his broken foot, tied the student to his wheelchair, and forced him to sit in his feces; and that the teacher forced another student to stand on a chair for long periods of time as punishment for falling asleep in class. Petitioners direct the Court to E.H. v. Brentwood Union School District, Case No. 3:13-cv-03243 (N.D. Cal. Oct. 27, 2014), wherein Plaintiffs submit the court approved a settlement of $50,000 based on allegations that a special education student was subjected to unlawful corporal punishment because of his disabling condition.

Finally, the Petitioners submit the net recovery here is similar to that in Becker v. Long Beach Unified School District, Case No. 2:20-mc-00098, (C.D. Cal. October 20, 2022) ("Becker"). Petitioners submit that the court approved a structured settlement that initially started with a $140,000 payment; that the allegations were similar in that the student was denied access to a school program for several years resulting in damages; that so long as the student subject of that case, who was still eligible for special education, remained the responsibility of the school district, and resided in the jurisdiction of the school district, three more payments would be issued in the amount of $140,000; and that the total net process in that case were approximately $550,000. (Suppl. 5.) Petitioners emphasize that it is important to note that unlike S.W. who will shortly age out of special education, the student in Becker was still eligible for special education for several more years and the subsequent payments were made in exchange for the student waiving his right to a free and appropriate public education under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (Id.) Here, S.W. will shortly age out of special education, has received benefit from the underlying special education settlement, and will have sufficient funds to create a similar program and fix the remaining issues with her teeth.

The Court finds these cases do provide support for finding the Settlement Agreement fair and reasonable. The Court has conducted its own research located additional caselaw that provides more support for finding the Settlement Agreement to be fair and reasonable.

1    In C.F., plaintiff initiated claims arising under the Individuals with Disabilities Education Act after the school district deemed C.F. ineligible to receive special education services and support. C.F. v. San Lorenzo Unified Sch. Dist., No. 16-CV-01852-RS, 2016 WL 4521857, at *2 (N.D. Cal. Aug. 29, 2016). Before C.F. entered kindergarten, a parent asked the district to perform special education testing. Although the district complied, at the end of the assessment, it concluded C.F. was ineligible to receive special education services. While the action was pending, the district reevaluated C.F. and concluded he was eligible to receive special education. Id. The court approved a settlement in the amount of $65,000, with $10,000 of the total fund going to provide C.F. with educational services, and attorneys' fees in the amount of $55,000 of the $65,000 fund. Id. ("[T]he primary goal of this action was to ensure C.F. received the special education services he needs. The District has agreed to provide those services and to compensate C.F. for any educational opportunities he lost while this litigation was ongoing.").

In A.A., the court approved a settlement where $63,200 would be deposited into a special needs trust, and an additional $10,000 in settlement funds would be dedicated to trust administration, with the $63,200 "earmarked for a FAPE buyout, i.e., to provide A.A., Jr. with a free and appropriate education through the 2020–2021 school year, at which time his eligibility for services under the IDEA comes to an end." A.A. on behalf of A.A. v. Clovis Unified Sch. Dist., No. 113CV01043AWIMJS, 2018 WL 1167927, at *3-4 (E.D. Cal. Mar. 6, 2018), report and recommendation adopted sub nom. A.A. v. Clovis Unified Sch. Dist., No. 113CV01043AWIMJS, 2018 WL 1453243 (E.D. Cal. Mar. 23, 2018).

In G.C., plaintiff sought implementation of G.C.'s IEP and compensatory education due to the defendant's failure to implement G.C.'s IEP during distance learning over the 2019–20 and 2020–21 school years. G.C. By & Through Clark v. San Diego Unified Sch. Dist., No. 21-CV-00019-L-BGS, 2021 WL 3630112, at *2–3 (S.D. Cal. Aug. 17, 2021), report and recommendation adopted sub nom. G.C. v. San Diego Unified Sch. Dist., No. 3:21-CV-19-L-BGS, 2021 WL 4060534 (S.D. Cal. Sept. 3, 2021). Under the terms of the approved settlement, the defendant would provide plaintiff with a total of $108,500.00 to encompass any future FAPE obligations through June 30, 2021, which is when G.C. would age out of eligibility

15

for special education and related services, and after attorney fees and costs, plaintiff would receive $89,000.00. Id.

In D.C., plaintiffs alleged that the school failed to provide proper programs, services and activities to D.C. to accommodate his disability (attention deficit hyperactivity disorder and specific learning disability); and alleged that the school improperly used restraints on D.C. on multiple occasions, including one occasion where D.C. sprained his ankle and received medical treatment. D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist., No. 1:11-CV-01112-SAB, 2013 WL 275271, at *2 (E.D. Cal. Jan. 23, 2013). The claims in were settled for the sum total of $65,000.00, with $30,000.00 to be disbursed to D.C. (held in a Uniform Minor's Account, with T.C. as custodian), $18,379.00 to T.C., $6,689.50 to legal fees, $6,689.50 to other legal fees, and $3,242.00 to Medi–Cal to satisfy potential liens related to D.C.'s medical treatment. Id.

In J.S. v. Santa Clara County Office of Education, 2019 WL 7020321, at *1 (N.D. Cal. Dec. 20, 2019), the child, who suffered from various disorders, was denied a free appropriate education for a year and was assaulted by an employee of the school. The child and her parent settled the case for the payment of attorney's fees and $7,000 payable for the child's damages and the rest paid to the parent who stated it would be used for trauma therapy. Id. at 1-2 ("The remaining $12,500 will be distributed to J.S. and Terre S. Of that sum, $5,500 is intended to settle the tort claim and will be paid directly to Terre S., who avers that she will use those funds to secure trauma therapy for J.S . . . The remaining $7,000 is intended to cover J.S.'s qualified educational expenses until those funds are depleted, or through June 30, 2021, whichever occurs first."); see also R.Q. v. Tehachapi Unified Sch. Dist., No. 116CV01485NONEJLT, 2020 WL 5940168, at *3 (E.D. Cal. Oct. 7, 2020) ("The District have agreed to pay the total amount of $34,000 . . . represents 12 hours of compensatory education for the child . . . [o]f this amount, $4,000 will be paid to the child's parent, Charis Quatro, as reimbursement for costs incurred during the time the child did not attend school caused by the failure to provide him an appropriate learning environment . . . The balance of the amount will be paid in two installments to an ABLE account as compensation for harm suffered by the boy . . . parties agree the District will pay $100,000 to the plaintiff's attorney."), report and recommendation adopted, No.

16

116CV01485NONEJLT, 2020 WL 6318223 (E.D. Cal. Oct. 28, 2020)

Based on the above cases, the Court finds the net amount to be distributed is fair and reasonable in consideration of the facts of the case, the specific claims, and recovery in similar cases. The Court finds Joint Petition demonstrates the legitimate and fair compromise of the dispute.

### 3. Attorneys' Fees

Attorneys' fees in the amount of twenty-five percent (25%) are the typical benchmark in contingency cases for minors. McCue v. S. Fork Union Sch. Dist., No. 1:10-CV-00233-LJO, 2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012) ("It has been the practice in the Eastern District of California to consider 25% of the recovery as the benchmark for attorney fees in contingency cases for minors, subject to a showing of good cause to exceed that rate."). Given the holding in Robidoux, it may be error for this court to reject the settlement simply because the Court finds that the attorney fees sought are excessive. Velez v. Bakken, No. 2:17-CV-960 WBS KJN, 2019 WL 358703, at *2 n.4 (E.D. Cal. Jan. 29, 2019) (noting holding of Robidoux makes reduction of fees simply for finding them to be excessive error, and additionally finding that attorneys' fees amounting to 46% of the settlement, though higher than benchmark, was "not excessive because of counsel's experience with similar cases, the amount of time counsel spent investigating the claims, and the risk counsel took in pursuing this action on a contingency basis.").

Plaintiff's counsel will take $60,000 to cover its attorneys' fees and costs in this matter. Counsel proffers it has elected to take only attorneys' fees and costs as opposed to a percentage of the total settlement proceeds, which the fee agreement allows for. Counsel proffers was a decision made to maximize S.W.'s net proceeds and ensure a settlement could be reached. (Pet. 4.) This represents 12% of the total gross settlement amount of $500,000. Further, even if the Court were to include the estimated $6,000 for an estate planning attorney, such total amount would represent 13.2% of the total settlement amount.

In consideration of the course of litigation, the facts of the case, and the total settlement amount, the Court does not find the attorneys' fees excessive. See Velez, 2019 WL 358703, at

*2; Robidoux, 638 F.3d at 1181.

4. Consideration of Public Policy

The Petitioners proffer that "because S.W. would technically continue to be a special education student through her twenty-second birthday, the Settlement Agreement releases the Defendant of any legal responsibility to provide an education to S.W. prospectively [and] includes a prospective waiver of special education claims under the Individuals with Disability Education Act ("IDEA") and Section 504 of the Rehabilitation Act." (Pet. 3.)

The Court ordered supplemental briefing on the issue of whether this waiver may violate public policy laws. See Y.G. v. Riverside Unified Sch. Dist., 774 F. Supp. 2d 1055, 1064-65 (C.D. Cal. 2011) ("Defendants argue that plaintiffs fail to state a claim under sections 1668 and 3513 because the Agreement is a private settlement agreement pertaining to an individual student and parent, and not the public at large [and] assert that to find otherwise would potentially render the majority of waivers set forth in settlement agreements entered into by parties in special education matters void on the basis that said agreements are primarily for the public purpose . . . [t]he Court finds that the allegation that a prospective waiver of procedural and substantive rights under the IDEA may be void as against public policy pursuant to California Civil Code §§ 1668 and 3513 is 'plausible on its face,' and therefore sufficient to defeat a motion to dismiss.").[5]

In supplemental briefing the Petitioners submit that the Settlement Agreement does not violate public policy. First, Petitioners emphasize that S.W. will no longer be eligible for special education services at the beginning of the 2022-2023 school year because she will reach the age of twenty-two before the beginning of the school year, and additionally, the 2021-2022 school year has ended. See Ca. Ed. Code § 56026(c)(4)(B). Petitioners argue that California Civil Code § 1668 should not apply to this case as it does not involve allegations of fraud or willful injury, and the parties do not believe there is evidence that either occurred. Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or

---

[5] The Court notes that it is unclear from a subsequent order in the Central District case whether the Court later considered such waiver to be appropriate or enforceable, though it appears the court did grant a motion to enforce the settlement agreement without discussion of the waiver. See Y.G., 2012 WL 2153957, at *4.

18

1   violation of law, whether willful or negligent, are against the policy of the law."). Petitioners do
2   not address the phrase "or violation of law, whether willful or negligent," however, the Court
3   finds Plaintiff's arguments reasonable. State Farm Fire & Cas. Co. v. Huie, 666 F. Supp. 1402,
4   1404 (N.D. Cal. 1987) ("The public policy underlying those code sections is to prevent the
5   encouragement of willful torts.") (citing Tomerlin v. Canadian Indemnity, 61 Cal.2d 638, 648,
6   39 Cal.Rptr. 731, 394 P.2d 571 (1964)). Petitioners submit that waiving the education that could
7   be provided under the IDEA or Section 504 through S.W's twenty-second birthday does not
8   involve an element of fraud or willful injury, and on the contrary, S.W. will be provided with
9   more than sufficient funding to continue with her education for many years, either in a private
10  school setting or through private providers in the community. (Suppl. 6.)

11       California Civil Code § 3513 provides that "Any one may waive the advantage of a law
12  intended solely for his benefit[,] [b]ut a law established for a public reason cannot be
13  contravened by a private agreement." With respect to this provision, Petitioners proffer that the
14  Supreme Court of California addressed a similar issue. See Cnty. of Riverside v. Superior Ct.,
15  27 Cal. 4th 793, 804-807, 42 P.3d 1034 (2002) ("The Bill of Rights Act, which explicitly
16  declares that its purpose is to promote 'effective law enforcement' . . . was clearly 'established
17  for a public reason[,]'. . . [t]herefore, we think the Bill of Rights Act is, like many other statutory
18  schemes enacted for the protection of a class of employees, not subject to blanket waiver . . . [but
19  hold] express waiver of his right to view the background investigation file is enforceable because
20  he knew or should have known the full consequences of that waiver."). Here, Petitioners submit
21  that: S.W.'s guardian ad litem is fully aware of the consequences of the prospective wavier; that
22  this waiver only applies to the District; that S.W. and her mother remain free to relocate to
23  another school district and receive the befits of the IDEA; and finally, as discussed above, S.W.
24  will be ineligible for the rights conferred under the IDEA or Section 504 at the end of the current
25  school year, inclusive of the extended school year.

26       Based on the totality of the facts, the terms of the Settlement Agreement, and the
27  applicable law, the Court does not find the waivers to violate public policy.
28  / / /

## V.

## RECOMMENDATION AND ORDER VACATING HEARING

Based on the recovery in the similar cases cited above, the facts of this case, and the specific claims, the Court finds the net amount of $436,000 to be distributed to S.W. to be fair and reasonable, and shall recommend granting the petition for compromise of the claims.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The joint petition for approval of incompetent's compromise (ECF No. 24) be GRANTED; and
2. The proposed settlement of Plaintiff S.W.'s claims be APPROVED as fair and reasonable.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS FURTHER ORDERED that the hearing set for June 15, 2022, is VACATED.

IT IS SO ORDERED.

Dated: __**June 14, 2022**__

UNITED STATES MAGISTRATE JUDGE